IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LINDA S. SHULTZ,                )
                                )
            Plaintiff,          )
                                )
      v.                        )  Civil Action No. 04-1547
                                )
JO ANNE B. BARNHART,            )
COMMISSIONER OF                 )
SOCIAL SECURITY,                )
                                )
            Defendant.          )

MEMORANDUM JUDGMENT ORDER

AND NOW, this 1st day of March, 2006, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits under Title II of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 8) be, and the same hereby is, granted and the Commissioner's motion for summary judgment (Document No. 10) be, and the same hereby is, denied. The Commissioner's decision of May 20, 2004, will be reversed and this case will be remanded to the Commissioner for further proceedings consistent with this opinion pursuant to sentence 4 of 42 U.S.C. §405(g).

When the Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence.

"Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

Plaintiff protectively filed her application for disability insurance benefits on January 31, 2003, alleging a disability onset date of December 30, 1998, due to a left knee impairment, lower back degenerative disc disease and stenosis of the spine. Plaintiff's application was denied initially. At plaintiff's request, an ALJ held a hearing on March 2, 2004, at which plaintiff, represented by counsel, appeared and testified. On May 20, 2004, the ALJ issued a decision finding that plaintiff is not disabled. On August 12, 2004, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

- 2 -

Plaintiff was 44 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §404.1563(c). Plaintiff has a high school equivalent education and past relevant work experience as a nurse's aide, but has not engaged in any substantial gainful activity since her alleged onset date. For purposes of plaintiff's application for Title II benefits, the ALJ found that plaintiff met the disability insured status requirements of the Act on her alleged onset date and has acquired sufficient quarters of coverage to remain insured through at least December 31, 2004.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of lower back degenerative disc disease, arthritis, and status post left knee surgery and post cervical spine laminaplasty, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed at Appendix 1, 20 C.F.R. Subpart P, Regulations No. 4.

The ALJ further found that plaintiff retains the residual functional capacity to perform less than the full range of sedentary work. Relying on the vocational expert's testimony, the ALJ found that, although plaintiff cannot perform her past relevant work, in light of her age, education, work experience and residual functional capacity she nevertheless retains the ability

to perform other work existing in significant numbers in the national economy. Accordingly, the ALJ found that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §423(d)(1)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process[1] for determining whether a claimant is under a disability. 20 C.F.R. §404.1520; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). Generally, if the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Here, plaintiff challenges the ALJ's findings at steps 3 and

---

[1] The ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past-relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §404.1520. See also Newell, 347 F.3d at 545-46.

5 of the sequential evaluation process. Specifically, plaintiff contends that the ALJ erroneously found that plaintiff does not meet the listing for lumbar spinal stenosis set forth at 1.04.C, and that the ALJ's finding that plaintiff retains the residual functional capacity for less than the full range of sedentary work is not supported by substantial evidence. Upon a review of the record, this court finds that the ALJ's step 3 finding that plaintiff's severe impairments do not meet or equal any listed impairment is not supported by substantial evidence.[2]

At step 3, the ALJ must determine whether a claimant's impairment matches, or is equivalent to, one of the listed impairments. <u>Burnett v. Commissioner of Social Security Administration</u>, 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an adult, regardless of age, education, or work experience, from performing any gainful activity. <u>Knepp v. Apfel</u>, 204 F.3d 78, 85 (3d Cir. 2000); 20 C.F.R. §404.1520(d). "If the impairment is equivalent to a listed impairment then [the claimant] is per se disabled and no further analysis is necessary." <u>Burnett</u>, 220 F.3d at 119.

The burden is on the ALJ to identify the relevant listed impairment in the federal regulations that compares with the claimant's impairment. <u>Id</u>. at 120 n.2. The ALJ must "fully develop the record and explain his findings at step 3, including

---

[2] Because the court finds that the record supports a finding of disability at step 3 of the sequential evaluation process, it need not address plaintiff's challenge to the ALJ's step 5 findings.

- 5 -

an analysis of whether and why [the claimant's] ... impairments ... are or are not equivalent in severity to one of the listed impairments." Id.

The relevant listed impairments in this case are those for disorders of the musculoskeletal system found at Listing 1.00, et seq., of the regulations. Specifically, the ALJ found that plaintiff suffers from the severe impairments of, inter alia, lower back degenerative disc disease and status post cervical spine laminaplasty. These types of impairments are addressed in Listing 1.04 for disorders of the spine. Although the ALJ found that none of plaintiff's severe spinal impairments meet or equal the Listing at 1.04 under any of its subparts, upon a review of the record the court finds that the ALJ failed adequately to explain why plaintiff does not meet this listing, in particular, Listing 1.04C, governing lumbar spinal stenosis.

Listing 1.04C provides:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> . . .
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Here, the ALJ found that plaintiff does not meet this listing

because the "record does not show that [plaintiff] has a compromise of a nerve root or the spinal cord" and because the "record does not show that [plaintiff] has lumbar spinal stenosis resulting in pseudoclaudication, chronic nonradicular pain and weakness, and inability to ambulate effectively."  (R. 15)

Upon review of the record, the ALJ's step 3 analysis fails to withstand substantial evidence scrutiny.  First, the ALJ's "analysis" is conclusory and merely parrots the language of the regulations in stating that the record does not show that plaintiff meets the specific criteria of the listing.  There is no indication, however, that the ALJ actually analyzed the specific criteria of the listing utilizing the factors enumerated in the introductory paragraphs to Listing 1.00.

The introductory paragraphs set forth the considerations to be taken into account in determining whether the specific criteria of a listing are met.  Thus, in analyzing whether Listing 1.04C is met, the ALJ is required to consider, in particular, ¶1.00K3, to determine whether the plaintiff has lumbar spinal stenosis, pseudoclaudication and chronic nonradicular pain and weakness, all of which are defined in that paragraph, as well as ¶1.00B2b, which defines what is meant by an inability to ambulate effectively. There is no evidence in the ALJ's decision indicating that he analyzed the specific criteria of Listing 1.04C taking into account these appropriate considerations.

When the criteria of Listing 1.04C properly are analyzed under the definitions set forth in the introductory paragraphs,

the medical evidence of record is sufficient to establish that plaintiff in fact does meet those criteria. The record is replete with both medical reports and testimonial evidence from plaintiff sufficient to establish that plaintiff suffers from lumbar spinal stenosis with pseudoclaudication manifested by chronic nonradicular pain and weakness resulting in an inability to ambulate effectively as those terms are defined in the introductory paragraphs of Regulation 1.00.

In particular, Dr. Kang, plaintiff's treating orthopedic surgeon, opined in a medical assessment questionnaire dated March 24, 2005, that plaintiff in fact meets all of the criteria of Listing 1.04C. (R. 392-395). He noted that plaintiff recently had been diagnosed with lumbar spinal stenosis as demonstrated by an MRI. (R. 393). He notes that plaintiff has pseudoclaudication as demonstrated by pain in the low back, buttocks and legs worse than in the back. (R. 394). ¶1.00K3 specifically notes that pseudoclaudication is "manifested as pain and weakness" and that "[s]ymptoms are usually bilateral, in the low back, buttocks, or thighs." Finally, Dr. Kang's report indicates that plaintiff's lumbar spinal stenosis affects her ability to stand and walk. (R. 395).

The ALJ's treatment of Dr. Kang's report fails to withstand scrutiny. First, a review of the ALJ's decision establishes that the ALJ never considered Dr. Kang's report in the context of determining at step 3 whether plaintiff's impairments meet or equal a listing. Instead, the ALJ's analysis of Dr. Kang's report

was made solely in the context of assessing plaintiff's residual functional capacity at step 5 as evidenced by the fact that the ALJ specifically noted that he was not according great weight to the opinion of Dr. Kang "insofar as [he] suggests an inability to perform sedentary work activity". (R. 19). There is no analysis as to what effect Dr. Kang's report had on the ALJ's finding that plaintiff does not meet a listing.

Second, to the extent that the ALJ decided not to give Dr. Kang's report controlling weight insofar as plaintiff's residual functional capacity is concerned for the ALJ's stated reason that Dr. Kang's report is not supported by his own findings and is inconsistent with other clinical and objective findings of record, that rationale clearly cannot be said to apply to the findings set forth in that report relevant to a step 3 analysis. Specifically, there simply is no evidence in the record whatsoever that contradicts Dr. Kang's diagnosis of lumbar spinal stenosis resulting in pseudoclaudication, as established by an MRI, manifested by chronic nonradicular pain and weakness, and resulting in an inability or ambulate effectively.

Under the Social Security Regulations and the law of this circuit, opinions of treating physicians are entitled to substantial, and at times even controlling, weight. 20 C.F.R. §404.1527(d)(2); Fargnoli v. Barnhart, 247 F.3d 34, 43 (3d Cir. 2001). Where a treating physician's opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques and is

AO 72A
(Rev.8/82)

not inconsistent with other substantial evidence in the record, it is to be given controlling weight. Id. Here, Dr. Kang's medical assessment is well supported by medically accepted diagnostic techniques and is not inconsistent with other substantial evidence in the record. Accordingly, it was entitled to controlling weight under the applicable regulations.

Although the Commissioner argues on appeal that there is "no evidence of chronic nonradicular pain and weakness resulting in an inability to ambulate effectively", that assertion is belied by the record. Plaintiff consistently complained of pain to all of her treating and examining physicians, and the pain she described is supported by the objective medical evidence as indicated by Dr. Kang's diagnosis of lumbar spinal stenosis. See 20 C.F.R. §414.1529(c). Moreover, the pain she described and which was reported in Dr. Kang's assessment is a typical symptom of pseudoclaudication as defined in ¶1.00K3 of the regulations.

Likewise, contrary to the Commissioner's assertion, there is sufficient evidence in the record establishing an "inability to ambulate effectively" as defined in ¶1.00B2b(2). Under that section, in order to ambulate effectively, "individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." The paragraph further lists examples of an inability to ambulate effectively to include the "inability to walk a block at a reasonable pace on rough or uneven surfaces" and the "inability to climb a few steps at a reasonable pace with the use of a single

AO 72A
(Rev.8/82)

hand rail."

Here, the record is replete with evidence indicating that plaintiff has difficulty carrying out activities of daily living which precludes a finding that she can ambulate effectively within the meaning of the regulations. Dr. Kang noted that plaintiff's lumbar spinal stenosis affects her ability to walk. (R. 395). Dr. Barua, although noting that a cane was not "essential", did suggest that using a cane would be helpful to prevent plaintiff from falling and that she might benefit from a knee brace. (R. 291). Plaintiff testified that she must use a cane and hold onto the railing to balance herself to go up and down stairs. (R. 47). She further testified that without a cane or something else to hold onto, she can only stand at most ten minutes. (R. 52). Significantly, the ALJ's own residual functional capacity finding is inconsistent with a finding that plaintiff can ambulate effectively, as the ALJ included a limitation indicating that she needs to ambulate to the workplace with a cane. (R. 22).

When the record has been developed fully and when substantial evidence in the record as a whole indicates that a claimant is disabled and entitled to benefits, it is unreasonable to remand because of the resulting delay in receipt of benefits, and the decision of the Commissioner will be reversed. Podedworny v. Harris, 745 F.2d 210, 221-222 (3d Cir. 1984). Here, the record has been developed fully and substantial medical evidence exists supporting a finding that plaintiff is disabled at step 3 of the sequential evaluation process as she meets the listing for lumbar

spinal stenosis. Therefore, a remand for additional evaluation of the evidence would be inappropriate in this case.

Accordingly, for the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner for further proceedings solely to determine the amount of benefits to which plaintiff is entitled.[3]

*Gustave Diamond* (signature)<br>
Gustave Diamond<br>
United States District Judge

cc: Linda Broker, Esq.
    Hooker & Broker, LLC
    533 Rugh Street, Suite 3
    Greensburg, PA 15601-5615

    Paul D. Kovac
    Assistant U.S. Attorney
    U.S. Post Office & Courthouse
    700 Grant Street, Suite 400
    Pittsburgh, PA 15219

---

[3] In this regard, the court notes that plaintiff previously filed two prior pro se applications for benefits which were denied at the administrative level on June 22, 1999, and February 10, 2000, respectively. Because the ALJ found plaintiff not disabled, he found it unnecessary to consider the question of whether these unfavorable determinations should be reopened or revised. In light of this court's finding that plaintiff is disabled under the Act, on remand, this issue should be considered in determining the amount of benefits to which plaintiff is entitled.